UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM A. OSORIO,

                              Plaintiff,

    v.

WESTCHESTER COUNTY, *et al.*,

                             Defendants.

No. 18-CV-5620 (KMK)

OPINION & ORDER

Appearances:

William A. Osorio
Valhalla, NY
*Pro Se Plaintiff*

Loren Zeitler, Esq.
Westchester County Department of Law
White Plains, NY
*Counsel for Defendants*

Mony B.P. Yin, Esq.
Thomas J. Bracken, Esq.

Bennett, Bricklin & Saltzburg, LLC
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      William A. Osorio ("Plaintiff") brings this pro se Action, pursuant to 42 U.S.C. § 1983, against Westchester County, Aramark Correctional Services, LLC ("Aramark"), Warden Francis Delgrosso ("Delgrosso"), and Aramark Food Service Director Manuel Mendoza ("Mendoza") (collectively, "Defendants"), alleging that Defendants provided him with substandard and unhygienic food while incarcerated at Westchester County Jail, in violation of the Fourteenth Amendment. Before the Court is Defendants' Motion To Dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6) (the "Motion"). (Not. of Mot. (Dkt. No. 17).) For the following reasons, the Motion is granted.

I. Background

A. Factual History

The following facts are drawn from Plaintiff's Complaint, (Compl. (Dkt. No. 2)), and are taken as true for purposes of resolving the instant Motion.

Plaintiff alleges that, since his arrival at Westchester County Jail ("WCJ") on October 30, 2017, Defendant Aramark has provided him with substandard and unhygienic food. (Compl. 5–6.)[1] In particular, Plaintiff — who is supposed to be on a "diabetic diet" — alleges that his meal trays arrive with "rotte[n] food[]"; that his "salad is always brown and soggy"; that his "meat is always raw and look[s] pink"; that he "find[s] insects" and "dead [flies]" in [his] food"; that the meal trays have "mold" and "[leftover] food from [previous] meals" on them; and that the food tastes "like pieces of plastic [are] coming off the tray and mixing with the food." (*Id.*) As a result, Plaintiff has experienced "nausea, explosive diarrhea, vomiting, stomach cramps, fatigue, headaches, hunger pangs, [and] dehydration." (*Id.* at 7.)

Plaintiff alleges that Defendant Delgrosso "knows" of the food problem "through gri[e]vances, investigations[,] and complaints, but fails to take corrective actions." (*Id.* at 5.) Plaintiff also alleges that Kitt (not named as a defendant) refused to accept his grievance on grounds that he was "not accepting Aramark grievances." (*Id.* at 6.) Finally, Plaintiff alleges that Defendants Delgrosso and Mendoza (along with Spano and Flax, not named as defendants) "attend[] daily meetings" in which they "discuss . . . food [grievances] and lawsuits." (*Id.*)

---

[1] Plaintiff's filings do not use consistent pagination. To avoid confusion, the Court cites to the ECF-generated page numbers at the top right corner of the relevant page.

B. Procedural History

The initial Complaint was filed on June 20, 2018. (Compl.) On July 18, 2018, the Court granted Plaintiff's request to proceed in forma pauperis ("IFP"). (Dkt. No. 4.) Defendants filed the instant Motion To Dismiss on December 5, 2018. (Not. of Mot. (Dkt. No. 17); Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 18).) Plaintiff did not file a response in opposition. On May 24, 2019, the Court granted Defendants' request to consider the Motion fully submitted. (Dkt. No. 20.)

II. Discussion

Defendants principally argue that Plaintiff's Fourteenth Amendment conditions-of-confinement claim as to Westchester County, Aramark, and the individual Defendants in their official capacities fails because Plaintiff has not established *Monell* liability; that Plaintiff fails to establish the personal involvement of the individual Defendants in any constitutional violation; and that, on the merits, Plaintiff fails to state a conditions-of-confinement claim. (Defs.' Mem. 8–15.)[2] The Court addresses each argument separately to the extent necessary.

A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil

---

[2] To the extent Defendants also make a qualified immunity "argument," (*see* Defs.' Mem. 15), Defendants merely restate the qualified immunity caselaw without meaningfully applying it to the facts of the case. The Court therefore declines to consider at this time whether Defendants are protected by qualified immunity.

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d

302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted).

### B. Analysis

#### 1. *Monell* Liability

Defendants argue that Plaintiff fails to plausibly allege *Monell* liability as to Westchester County, Aramark, and the individual Defendants in their official capacities. (Defs.' Mem. 8–11.)

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v.*

*Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior" (citation and italics omitted)). Therefore, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–691). The fifth element reflects the notion that a *Monell* defendant "may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citation omitted). A plaintiff may satisfy the fifth element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Here, Plaintiff does not allege the existence of a formal policy or widespread informal custom, nor does he allege that a municipal official with policymaking authority took certain actions that caused the alleged problems at issue in this case. Rather, Plaintiff squarely alleges, under the fourth prong above, that Westchester County "fails to supervise" Aramark's food preparation at WCJ to "ensure . . . compliance." (Compl. 6.) On its own, this "boilerplate" allegation "is insufficient, without more, to state a *Monell* claim." *Dawson v. Westchester County*, No. 18-CV-7790, 2019 WL 3408899, at *4 (S.D.N.Y. July 29, 2019) (citations and

alterations omitted). To state a *Monell* claim based on a failure to supervise, Plaintiff must allege "(1) [that] there was a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2) [that] the municipality consistently failed to investigate those allegations." *Treadwell v. County of Putnam*, No. 14-CV-10137, 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30, 2016) (citation omitted). Plaintiff must also allege that the municipality was deliberately indifferent to its employees' conduct, for example, by showing "that the need for more or better supervision to protect against constitutional violations was obvious," *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995). Plaintiff alleges here that Delgrosso "knows" of the food-related problems at WCJ as a result of receiving grievances, investigations, and complaints, (Compl. 5), and that Delgrosso and Mendoza (along with others not named as defendants) "attend[] daily meetings" in which they "discuss . . . food [grievances] and lawsuits," (*id.* at 6). It is true that Plaintiff may establish deliberate indifference from the fact that there "were repeated complaints of civil rights violations" and that "the complaints [were] followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Shepherd v. Powers*, No. 11-CV-6860, 2012 WL 4477241, at *9 (S.D.N.Y. Sept. 27, 2012) (citation and quotation marks omitted); *see also Lawrence v. City of Rochester*, No. 09-CV-6078, 2015 WL 510048, at *7, 9 (W.D.N.Y. Feb. 6, 2015) (same). However, cases in which plaintiffs have successfully established deliberate indifference by pointing to previous grievances and lawsuits have involved pleadings that name and detail those previous lawsuits. *See Edwards v. City of New York*, No. 14-CV-10058, 2015 WL 5052637, at *6 (S.D.N.Y. Aug. 27, 2015) (holding that the plaintiff sufficiently alleged the need for better supervision where he "cited government reports, news articles[,] and [18] prior lawsuits" to "create a plausible inference that the [municipality] has not meaningfully acted to improve

7

training and/or supervision to prevent further incidents"); *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *20 (S.D.N.Y. Mar. 26, 2015) (holding that the plaintiff's "allegations [describing nine lawsuits over five years] allow[ed] the Court to plausibly infer that the [municipality] was on notice" of the allegedly unconstitutional conduct); *McCants v. City of Newburgh*, No. 14-CV-556, 2014 WL 6645987, at *4–5 (S.D.N.Y. Nov. 21, 2014) (holding that the plaintiff sufficiently alleged the need for better supervision where he listed and detailed seventeen other complaints over a seven-year period raising similar allegations against the same defendants); *Farrow v. City of Syracuse*, No. 12-CV-1401, 2014 WL 1311903, at *8 n.7 (N.D.N.Y. Mar. 31, 2014) (stating that the fact that "at least 15 excessive force complaints ha[d] been filed against the [c]ity in the past 5 years" would be sufficient to state a plausible failure to train claim); *cf. An v. City of New York*, 230 F. Supp. 3d 224, 231 (S.D.N.Y. 2017) (holding that citation to "six lawsuits and one newspaper article over the span of four years is insufficient to plausibly allege the [municipality's] need [to act] was obvious"). Plaintiff has failed to name or detail those alleged lawsuits, grievances, or investigations here. Therefore, Plaintiff's barebones allegation that Westchester County knew about WCJ's alleged food problems through receipt of complaints, grievances, and lawsuits does not, without more, plausibly allege a failure to supervise claim. *See Dawson*, 2019 WL 3408899, at *5 (dismissing *Monell* claim where the plaintiff alleged, in conclusory fashion, that WCJ and Aramark officials were aware of food preparation problems through prior lawsuits, inmate grievances, and daily meetings).

Accordingly, Plaintiff's claims against Westchester County and Aramark are dismissed, as are his claims against the individual Defendants in their official capacities. *See Jackson v. Westchester County*, No. 18-CV-7207, 2019 WL 3338020, at *5 (S.D.N.Y. July 25, 2019) (dismissing claims against municipality and individual defendant in official capacity where the

plaintiff failed to plausibly allege *Monell* liability).

### 2. Personal Involvement

Defendants argue that Plaintiff fails to allege the personal involvement of Delgrosso or Mendoza in any constitutional violation. (Defs.' Mem. 11–13.)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133,138 (2d Cir. 2013) (citation omitted). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citation, italics, and quotation marks omitted). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Here, Plaintiff alleges, as noted above, that Delgrosso "knows" of the food-related problems at WCJ as a result of receiving grievances, investigations, and complaints, (Compl. 5), and that Delgrosso and Mendoza (along with others not named as defendants) "attend[] daily meetings" in which they "discuss . . . food [grievances] and lawsuits," (*id.* at 6). These allegations require further factual development. "Plaintiff does not provide facts alleging *what*," in particular, Delgrosso and Mendoza "knew about the poor food problem or *when* they knew about it." *Dawson*, 2019 WL 3408899, at *6 (citations, quotation marks, and alterations

9

omitted). "Moreover, Plaintiff does not allege that" Delgrosso or Mendoza "participated directly in the preparation or distribution of food at all (let alone in the preparation or distribution of the particular food at issue), established a policy or custom that allowed for rotten food to be provided to inmates, failed to follow a policy or custom on food preparation, or were otherwise grossly negligent in allowing others to prepare food without following proper procedures." *Id*. That Delgrosso and Mendoza may hold supervisory positions at WCJ "does not change the analysis, because a defendant cannot be held liable for the service of rotten food based on a respondeat superior theory." *Id.* (citation, quotation marks, and original alterations omitted); *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Banks v. Annucci*, 48 F. Supp. 3d 394, 416 (N.D.N.Y. 2014) ("Where a defendant is a supervisory official, a mere 'linkage' to the unlawful conduct through the 'chain of command' (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct." (citations omitted)). There are, in sum, insufficient facts in the Complaint to plausibly suggest that Delgrosso or Mendoza were personally involved in the alleged unconstitutional deprivation at issue. *See Webster v. Fischer*, 694 F. Supp. 2d 163, 179 (N.D.N.Y. 2010) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."). Accordingly, Plaintiff's claims against Delgrosso and Mendoza in their individual capacities are dismissed.[3]

---

[3] Because the Court has dismissed all Defendants on other grounds, it need not fully consider whether Plaintiff states a Fourteenth Amendment claim based on the provision of substandard and unhygienic food. The Court notes, however, that the Constitution "require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who

10

III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted. Because this is the first adjudication of Plaintiff's claims, dismissal is without prejudice. If Plaintiff wishes to file an amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within that amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the amended complaint will replace, not supplement, all prior complaints and filings. The amended complaint must contain *all* of the defendants, claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider.[4] If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

---

consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (citation and quotation marks omitted). Plaintiff's allegations that he was served — while on a "diabetic diet" — undercooked, unhygienic, and contaminated food, thereby causing him illness, (Compl. 5–7), are nearly identical to other cases in which courts have held the objective prong satisfied. *See Moore v. Westchester County*, No. 18-CV-7782, 2019 WL 3889859, at *5 n.4 (S.D.N.Y. Aug. 19, 2019) (collecting cases in which courts have held that allegations of substandard, unhygienic, and contaminated food at WCJ satisfied the objective prong required to state a Fourteenth Amendment claim). The Court expects that counsel for Defendants will meaningfully address these repeated and serious allegations with their clients.

[4] As Judge Briccetti recently put it in a similar case alleging deficient food at WCJ, Plaintiff should, in amending his complaint:

1. give the dates and times of each incident in which [he] was served the food described in his complaint;

2. describe how each defendant was involved in serving [him] such food — for example, whether the defendant personally served him that food, was present when [he] was served such food, or otherwise knew [he] was served the food;

3. describe how each defendant knew or should have known the food served to [him] was inadequate;

The Clerk of the Court is respectfully requested to terminate the pending Motion, (Dkt. No. 17), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

DATED: August 21, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

4. state which, if any, defendants [he] informed of the problems with his food on each such occasion, how the defendants responded to his complaints, and how the defendants' responses or lack thereof contributed to his injury;

5. include any details why [he] believes Aramark, Westchester County, or any of their employees gave him such food or failed to remedy his complaints; and

6. include any facts regarding the existence of an official Aramark or Westchester County policy or [unofficial] custom that caused the deprivation of a constitutional right.

*Crispin v. Westchester County*, No. 18-CV-7561, 2019 WL 2419661, at *5 (S.D.N.Y. June 10, 2019).